UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

GUILLERMINA RODRIGUEZ GARCIA, and
DIANA PARRA, *on behalf of themselves and all
others similarly situated,*

Plaintiffs,

-against-

THREE DECKER RESTAURANT, LTD. (d/b/a 3
Decker Restaurant), 1746 FOOD CORP., (d/b/a 3
Decker Restaurant), ATHANASIOS
RAFTOPOULOS, RAMIRO TECORRAL, and
MEREDITH RAFTOPOULOS, individually,

Defendants.

_____ x

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 3/27/2024 |

22 Civ. 01387 (CM)

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
## GRANTING IN PART AND DENYING IN PART PLAINTIFF GARCIA'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

McMahon, J.:

Plaintiffs Guillermina Rodriguez Garcia has brought this action against her former

employers, Three Decker Restaurant, Ltd (hereinafter "Three Decker" or "the Restaurant"), 1746

Food Corp. (d/b/a 3 Decker Restaurant), Athanasios Raftopoulos, Ramiro Tecorral, and Meredith

Raftopoulos (hereinafter collectively referred to as "Defendants"), claiming violations of various

provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York

Labor Law ("NYLL"), N.Y. Labor Law §§ 190 *et seq.* & §§ 650 *et seq.*

The parties now cross-move for partial summary judgment.[1]

---

[1] Plaintiff Diana Parra had moved for summary judgment, as well; however, Parra has since settled her claims
against Defendants. The Court approved that settlement on March 4, 2024. *See* ECF Doc. 157.

Defendants argue that the complaint against Meredith Raftopoulos must be dismissed because under the "economic realities test," she is not, and has never been, active in the running of Three Decker Restaurant. Similarly, Defendants argue that 1746 Food Corp is not operational business entity and, thus, is not a proper defendant.

Plaintiffs ask the Court to issue an order that Defendants are Plaintiff's employers under the FSLA and NYLL and, therefore, liable under those statutes for, *inter alia*, failing to pay Plaintiff the lawful minimum and overtime wage, spread-of-hours compensation, or provide her with the required wage notices and pay statements. Garcia also asks that Defendants' counterclaim against her—alleging that she stole from them by keeping some of the gratuities she earned rather than contributing them to a tip pool—be dismissed. Garcia requests that the Court find that she is entitled to compensatory and statutory damages, attorney fees, and pre-judgement interest.

For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for partial summary judgment is granted in part and denied in part.

Background

Unless otherwise noted, the following facts are undisputed.

Plaintiffs Guillermina Garcia was employed by Defendants at Defendant's diner-type restaurant, known as "3 Decker Restaurant," located at 1746 Second Avenue, in Manhattan.

Garcia was a waitress in Defendants' restaurant for more than a decade, from approximately December 27, 2011, to January 1, 2022.

Defendants Three Decker Restaurant, Ltd., Athanasios Raftopoulos, and Ramiro Tecorral do not dispute that they are Plaintiff's employers as that term is defined under the FLSA and the NYLL. They do, however, dispute that Meredith Raftopoulos meets the description of an

2

employer under the FSLA and NYLL, and for that reason ask the Court to dismiss all claims against her.

Defendants' also contend that—notwithstanding Department of State search results that show that Three Decker Restaurant and 1746 Second Avenue both share the principal place of business at 1746 Second Avenue, New York, New York 10128—all claims against 1746 Food Corp., should be dismissed because it is not an operational entity.

There is a dispute as to the covered employment period for Garcia's NYLL claims: Defendants say it is six years (the statutory limitation period); Garcia contends that it is six years and 228 days (the statutory limitation period, plus the days the limitation period was tolled, pursuant to various Executive Orders that former Governor Andrew Cuomo issued in response to COVID-19 pandemic).

Defendants do not dispute that they are not eligible to take a tip credit against any wages they might owe Garcia because they did not furnish the statutorily required tip-credit notices. Defendants, however, dispute Garcia's contention that Defendants would also be disallowed this credit on the ground that a manager (Ramiro Tecorral) improperly share in employee tips. Defendants' contend that there was no misappropriation of tips by Mr. Tecorral.

Defendants admit that Garcia is owed some money for their having failed to pay her the requisite minimum wage during her employment, but dispute that she is entitled to compensation for their failure to pay overtime wages.

There is no dispute that Defendants did not pay "spread of hours" wages to Garcia. "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off

3

duty." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6. That said, the record is undeveloped as to whether Garcia worked hours in any given day that would have entitled her to spread of hours pay.

Defendants have no payroll records for Garcia before October 2019, and limited records for her after October 2019.

### Summary Judgment Standard

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). To survive summary judgment, the non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir. 2001).

Defendants' Motion for Summary Judgment

Defendants move for partial summary judgment asking the Court to dismiss the complaint as against (1) Meredith Raftopoulos, and (2) 1746 Food Corp.

### *Meredith Raftopoulos*

Garcia claims—and Defendants do not dispute—that Three Decker, Mr. Raftopolous, and Mr. Tecorral are Plaintiffs' employers for the purposes of FLSA and NYLL liability. However, the parties disagree about whether Meredith Raftopoulos is an "employer" under FLSA and NYLL. Defendants' argue that Meredith Raftopoulos cannot be held individually liable under FLSA or NYLL because she lacks operational control over the workforce.

In *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984), the Second Circuit adopted an "economic reality" test to assess whether a defendant is an employer under the FLSA. This test considers whether the defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* These factors are to be considered in the totality of circumstances. *Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132, 142–43 (2d Cir. 2008).

"Courts have interpreted the definition of 'employer' under the NYLL coextensively with the definition used by the FLSA." *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 268 (E.D.N.Y. 2019) (*quoting Copantitla v. Fiskardo Estiatorio, Inc.,* 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011). "[T]he Court's analysis under the FLSA applies equally to the claims under the NYLL and is not addressed separately." *Id.* (*citing Cavalotti v. Daddyo's BBQ, Inc.*, No. 15 Civ. 6469 (PKC) (VMS), 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018)).

5

In support of their burden, defendants offer the deposition of Ms. Raftopolous. Ms. Raftopoulos testified, *inter alia*, that she has never had the power to hire and fire employees at the Restaurant (Dkt. No. 120 at p. 20), never supervised or controlled the Restaurant's employee schedules or its conditions of employment (*Id*. at pp. 19-20), never determined the rate or method of payment of the Restaurant's employees (*Id.* at p. 20), and (4) never maintained any employment records at the Restaurant. (*Id.* at p.22). Indeed, Ms. Raftapolous testified that she did not even recall the last time she went to the Restaurant.

Her testimony is corroborated by the depositions of Manager Ramiro Tecorral (who has been a manager at the Restaurant since 1993), Mr. Athanasios, and the two plaintiffs. All of them substantially confirm Ms. Raftapolous' testimony (*id.* at pp. 14-16, 24-35), and agree that Ms. Raftapolous had entirely no presence in the business (*id.* at pp. 24-25, 32-33, 35). Tecorral testified that Ms. Raftapolous had no function in the business and that he had not seen her in years; Garcia said that she had not seen her since before the pandemic. *Id*. at 18.

Accordingly, Defendants have met their initial burden of demonstrating the absence of a genuine issue of material fact to dispute that Ms. Raftapolous was not an employer for FSLA purposes, the burden shifts to Plaintiffs to point to the existence of contrary evidence in order to defeat summary judgment on this issue.

Garcia has no evidence that contradicts the deposition testimony offered by defendants. Instead, she offers (1) an undated liquor license renewal application for the Restaurant, which lists Ms. Raftopoulos as a co-principal on the license along with her husband, and (2) a screenshot (also undated) taken from the New York Liquor Authority website listing the same. Garcia argues that, pursuant to the Alcoholic Beverage Control Law ("ABCL"), Ms. Raftopoulos (as a principal) was required to (1) hire and fire the employees, (2) supervise and control employee work schedules or

6

conditions of employment, (3) determine the rate and method of payment, and (4) maintain employment records. Plaintiff argues that the requirements for principals are the same requirements for establishing that a person is an owner under the *Clark* standard.

Garcia buttresses his argument by pointing to multiple provisions of the ABCL. The first offered provisions states that:

> No retail license for on-premises consumption shall be granted for any premises, unless the **applicant** shall be the owner thereof, or shall be in possession of said premises under a lease, management agreement or other agreement giving the applicant control over the food and beverage at the premises

ABCL § 106(1) (emphasis added). Plaintiff argues that because Ms. Rathopoulos is a listed as a "principal" on the liquor license application, she qualifies as someone who has "control over the food and beverage at the premises." This is incorrect on several counts. First, the statute uses the word "applicant," not "principal," and those words are not synonymous. Second, a close reading of the text of the statute indicates that it provides as follows: no retail license for on-premises consumption shall be granted unless the applicant (1) shall be the owner thereof; or (2) shall be in possession of said premises under a lease, management agreement or other agreement giving the applicant control over the food and beverage at the premises." There is no evidence that Ms. Raftopoulos is in possession of the premises under any lease or other agreement that gives her control over the food and beverages served at Triple Decker, so there is no evidence that she has any control over the business. And even if there were some evidence that Ms. Raftopoulos had control over food and beverages, that has nothing to do with whether she has hire-fire power over employees. Nothing in this provision of the ABCL addresses control over the hiring and firing of employees.

Garcia next argues that New York liquor control laws require Ms. Raftopolous— as a principal—to supervise employees, maintain records, and control the business. These laws do nothing of the sort. In support of her argument, she relies exclusively on the various requirements a liquor license imposes on an establishment. ABCL § 106(6) ("No [licensee] shall . . . suffer or permit such premises to become disorderly."); ABCL § 100(2-a) (prohibiting minors from selling alcohol except when properly supervised); ABCL § 102(2) (prohibiting employing a convicted felon); ABCL § 106(12) (requiring maintenance of records). None of these requirements has any relevance to the inquiry under the labor law.

To the extent there are certain duties the liquor license imposes, it seems patently obvious from the record that Mr. Raftopolous handles those duties in the course of running the restaurant– and does so completely independent of his wife.

Five separate people – to include Ms. Raftaplous herself, the Restaurant's manager of nearly 30 years, her husband and even the two plaintiffs testified to the effect that Ms. Raftapolous is not involved with the Restaurant's operations in the slightest. Garcia has not rebutted this evidence. The requirements of a business under its liquor license are not evidence of Ms. Raftopoulos' status as an "employer" under the FLSA and NYLL, as they are not evidence of Ms. Raftopoulos' involvement in the Restaurant's operations and do not go to establishing any of the *Carter* factors.

Accordingly, Ms. Raftapolous is dismissed as a defendant from the instant case.

### *1746 Food Corp.*

Defendants ask the Court to dismiss, with prejudice, all claims against 1746 Food Corp., on the ground that that entity is not, and never has been, involved in the running of

8

Three Decker Restaurant. Defendants claim that the purpose for creating 1746 Food Corp. was to permit Athanasios Raftopoulos to transfer the business to his son, Alex Raftopoulos. Tragically, Alex lost his life while serving in the Army. Rule 56.1 Statement para. 1. Defendants say that since Alex's death, 1746 Food Corp. "has no employees and is not in any-way involved in running the restaurant." *Id.*

"Separate companies are considered a 'single employer' if they are part of a single integrated enterprise." *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996), as amended (May 9, 1996). "The Supreme Court ... established a four-factor test to determine single employer; status." *Id.* "The test examines the interrelation of operations, common management, centralized control of labor relations and common ownership." *Id.* "Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises." Id. "To demonstrate single employer status, not every factor need be present, and no particular factor is controlling." *Id.* "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies." *Id.* ("also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises).

Here, the record before the Court suggests that 1746 Food Corp. (d/b/a "3 Decker Restaurant") had interrelated operations, common management, centralized control of labor relations and common ownership because they were owned by the same individual, Defendant Athanasios Raftopoulos, and shared the same principal place of business at Three Decker Restaurant. ECF Document 130, Ex. A and B. Nothing appears to distinguish Defendant 1746 Food Corp from Three Decker Restaurant. While 1746 may be, as Defendants allege, a dormant

9

company with no active role in running Three Decker, the inferences to be drawn from the facts in the 56.1 statements must be viewed in the light most favorable to the party opposing the motion for summary judgment. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Accordingly, at minimum, a factual issue remains as to whether 1746 Food Corp is Plaintiffs' employer for FSLA and NYLL purposes.

Defendant 1746 Food Corp.'s motion for summary judgment is denied.

Plaintiffs' Motion for Summary Judgment

Plaintiff Garcia has moved for summary judgment asking the Court to issue an order **(1)** that Defendants Three Decker Restaurant, LTD, Athanasios Raftopoulos, and Ramiro Tecorra were her employers as a matter of law under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and N.Y. Lab. Law § 190, et seq. ("NYLL"); **(2)** that FLSA coverage is established; **(3)** that the covered employment period for Plaintiff Garcia's NYLL claims is six years and 228 days; **(4)** that Defendants violated N.Y. Lab. Law § 195(1) and (3) and awarding damages pursuant to N.Y. Lab. Law § 198; **(5)** that Defendants violated FLSA and NYLL recordkeeping requirements and, therefore, Garcia is entitled to a favorable presumption that her allegations are true; **(6)** that Defendants are not entitled to a tip credit; **(7)** that Defendants violated minimum wage and overtime requirements as a matter of law, awarding partial damages, with the remainder of damages owed, if any, to be determined at trial; **(8)** that Defendants violated spread of hours requirements in an amount to be determined at trial; **(9)** that Garcia is entitled to liquidated damages on unpaid minimum and overtime wages and spread of hours, in amounts to be determined after summary judgment and trial; **(10)** that Defendants unlawfully withheld gratuities from Garcia in an amount to be determined at trial; **(11)** that Plaintiffs are entitled to an attorney's fees and costs in amounts to be determined after summary judgment and trial; **(12)** awarding

10

interest on damages awards in amounts to be determined after summary judgment and trial; **(13)** that Defendants have no legal basis to support counterclaims premised on a waitress keeping gratuities.

### *Three Decker, Raftopoulos, and Tecorral are Plaintiffs' Employers*

Defendants Three Decker, Mr. Raftopoulos, and Mr. Tecorral do not dispute that they (1) are subject to liability under the FLSA and NYLL as "covered employers," and (2) were Garcia's employer as defined by those statutes.

Indeed, Defendants would be hard pressed to suggest otherwise. First, Defendants are "covered employers" under the FLSA as a matter of law: They are "engaged in commerce," by earning over $500,000 annually, and engaging in interstate commerce. *Aponte v. Clinton St. Pizza Inc.,* No. 22-CV-3188 (KMW), 2023 WL 1795189 (S.D.N.Y. Feb. 7, 2023) (interstate commerce shown by buying and selling food and alcohol which had moved in interstate commerce and use of cutlery, linens, plates that moved interstate). R. 56.1 (¶ 78 – 85).

Second, Defendants are Garcia's employers for FSLA and NYLL purposes. "Determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality' rather than technical concepts." *Irizarry v. Catsimatidis,* 722 F.3d 99, 104 (2d Cir. 2013). "The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers." *Id.* "Four factors to determine the 'economic reality' of an employment relationship: whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003). "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Id*.

Here, there is no dispute that Defendants Three Decker, Raftopoulos, and Tecorral were Garcia's employers under the FLSA and NYLL. R. 56.1 (¶ 15). They had power to hire R. 56.1 (¶ 3, 20, 21, 22, 53, 54, 55). They had power to fire. R. 56.1 (¶ 3, 24, 27, 42, 56, 57, 58). Defendant Raftopoulos (the owner of Three Decker Restaurant) hired Defendant Tecorral and Tecorral hired Plaintiff Garcia. R. 56.1 (¶ 21, 54, 55). Defendants supervised and controlled Plaintiff's work schedules and conditions of employment. R. 56.1 (¶ 4, 28, 29, 30, 42, 59, 60, 62, 112, 113, 114). Defendant Tecorral set work schedules for Garcia. R. 56.1 (¶ 75, 76). Garcia worked on set schedules. R. 56.1 (¶ 76). Defendants each determined the rate and method of payment to Garcia. R. 56.1 (¶ 6, 25, 26, 65, 66, 67, 72). They both paid Garcia. R. 56.1 (¶ 49, 50, 70, 71). Defendants maintained limited employment records. R. 56.1 (¶ 7, 51, 74). Garcia was on Defendants' payroll. R. 56.1 (¶ 49, 202 – 204, 265, 266).

There is no question that Defendants "employed" Garcia and so are liable for any FLSA and NYLL violations, as a matter of law.

### *The Covered Period for NYLL Claims is Six Years and 228 Days*

Since there is no federal statute of limitations for Plaintiffs' New York Labor Law claims, the Court looks to the state for any limitations period. New York Labor Law § 663 sets a six-year statute of limitations for a private right of action for unpaid minimum and overtime wages.

However, Garcia contends that she is entitled to recover for six years and 228 days because former Governor Andrew Cuomo issued an executive order on March 20, 2020, that tolled all New York State statute of limitations—the tolled lasted 228 days.

Garcia is correct.

"Many courts in this district have found that the tolling in the executive order does apply to statute of limitations derived from New York law when brought in federal court." *D.S.R. v. New York City Dep't of Educ.*, No. 21-CV-7591 (ALC), 2023 WL 1993349, at \*4 (S.D.N.Y. Feb. 14, 2023) (finding that because the statute of limitations is derived from New York law, the executive order is applicable in the action and the statute of limitations is tolled by 228 days and citing *Bell v. Saunders*, No. 20-CV-00256 (BKS)(TWD), 2022 WL 2064872, at \*5 (N.D.N.Y. June 8, 2022); *Rich v. New York*, No. 21 CV-3835 (AT), 2022 WL 992885, at \*8 (S.D.N.Y. Mar. 31, 2022); *Paul v. Capra*, No. 20-CV-5154(NSR), 2022 WL 992845, at \*6 (S.D.N.Y. Mar. 31, 2022) and collecting cases); *Citi Connect, LLC v. Local Union No. 3, Int'l Brotherhood of Electrical Workers*, AFL-CIO, 2020 WL 5940143 (S.D.N.Y. Oct. 7, 2020) (Case brought under the Labor Management Relations Act (LMRA) § 301, which does not provide for a federal statute of limitations and thus borrows the appropriate state statute of limitations, which the COVID executive orders tolled 228 days.).

Accordingly, the statute of limitations for Garcia's NYLL claims runs 6 years and 228 days. The complaint was filed on February 18, 2022; 6 years, and 228 days before that was July 5, 2015.

### *Defendants Failed to Furnish Lawful Wage Notices and Statements*

Garcia seeks damages for Defendants' failure to provide her with wage notices and wage statements, pursuant to N.Y. Lab. Law § 195(1) and (3).

13

Under N.Y. Lab. Law § 195(1), Employers must provide employees, "at the time of

hiring," a notice written in English and the employees primary language stating:

> "the rate or rates of pay and basis thereof, whether paid by the hour, shift,
> day, week, salary, piece, commission, or other; allowances, if any, claimed
> as part of the minimum wage, including tip, meal, or lodging allowances; ...
> the regular pay day designated by the employer in accordance with section
> one hundred ninety-one of this article; the name of the employer; any "doing
> business as" names used by the employer; the physical address of the
> employer's main office or principal place of business, and a mailing address
> if different; the telephone number of the employer."

For violations of N.Y. Lab. Law § 195(1), an employee may recover fifty dollars for each

workday the violations occurred, not to exceed $5,000, along with costs and reasonable

attorney's fees. N.Y. Lab. Law § 198(1-b).

Under N.Y. Lab. Law § 195(3), Employers must provide employees with written

statements accompanying every payment of wages listing:

> "the dates of work covered by that payment of wages; name of employee;
> name of employer; address and phone number of employer; rate or rates of
> pay and basis thereof, whether paid by the hour, shift, day, week, salary,
> piece, commission, or other; gross wages; deductions; allowances, if any,
> claimed as part of the minimum wage; ... the regular hourly rate or rates of
> pay; the overtime rate or rates of pay; the number of regular hours worked,
> and the number of overtime hours worked." N.Y. Lab. Law § 195(3)

For violations of N.Y. Lab. Law § 195(3), an employee may recover $250 for each

workday the violations occurred not to exceed $5,000, with costs and reasonable

attorney's fees. N.Y. Lab. Law § 198(1-d).

Here, Defendants admit that there was no notice and there are no payroll records

of any kind for Plaintiff Garcia before October 2019. R. 56.1 (¶ 161 – 252). Accordingly,

Garcia is entitled to recover the maximum damages authorized under N.Y. Lab. Law §

198, (i.e., $10,000; $5,000 for wage notice violations and $5,000 for wage statement

violations), plus "costs and reasonable attorney's fees."

14

### *Garcia is Entitled to a Presumption that Her Allegations are True*

Garcia argues that Defendants' payroll records are deficient as a matter of law and that, consequently, she is entitled to a presumption that her evidence of wage and hour violations are accurate and true.

Under the FLSA, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes ... 'an employee has carried out [her] burden if [she] proves that [she] has in fact performed work for which he was improperly compensated and if [she] produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 362 (2d Cir. 2011) (*citing Andersonv Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate'." *Id*.

"Under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof." *Gamero v. Koodo Sushi Corp*., 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir 2018). "NYLL § 196–a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Id*.

Here, Defendants' payroll records are deficient as a matter of law.

Defendants have no payroll records at all for Garcia before October 2019. R 56.1

15

(¶ 201, 206, 209 – 227, 228). The limited records for Garcia after 2019 are replete with errors, do not show the accurate number of hours she worked, her regular rate, her overtime wage rate, or what her tip credit rate would be. R. 56.1 (¶ 217 – 224, R. 56.1 (¶ 145, 146, 227).

Accordingly, Garcia is entitled to an inference that whatever evidence she presents in support of her motion is true and accurate, until and unless Defendants produce evidence "to negative the reasonableness of the inference to be drawn from [Garcia's] evidence." *Kuebel v. Black & Decker Inc.*, 643 F.3d at 362. The record at present contains no such evidence.

### *Defendants are Not Entitled to Tip Credit*

Garcia argues that Defendants are not entitled to take a tip credit against minimum and overtime rates for either of two reasons: (1) Defendants did not furnish tip credit notices and (2) a manager (Tecorral) share in Garcia's tips.

Tip credit notice must be writing and signed by the employee. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 (requiring tip credit notice to be written and signed and include specific information.). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken, and the employer is liable for the full minimum-wage." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (construing tip credit notice against employer); *Zhang v. Hiro Sushi at Ollies, Inc.*, No. 17 CIV. 7066 (JPC), 2022 WL 2668263, at *8 (S.D.N.Y. July 11, 2022) ("Notice of the tip credit under the NYLL must be written") (emphasis added). Without a tip credit notice, tips do not offset wages. "The burden is on the defendants to show that they have complied with the tip notice

requirement[s]" in the FLSA and NYLL. *Valle v. Gordon Chen's Kitchen LLC*, 254 F.
Supp. 3d 665, 673 (S.D.N.Y. 2017).

Defendants agree that they are not entitled to a tip credit against any wages owed
because they failed to furnish the required notice to Plaintiff. R. 56.1 (¶¶ 88 – 111).[2]

Accordingly, Garcia's motion in this regard is granted— Defendants are
precluded from taken tip credits.

### *Defendants Violated Minimum Wage and Overtime Requirements*

Garcia contends that she was consistently paid less than the lawful minimum
wage and overtime rates, in violation of the FLSA and NYLL.

The FLSA requires employers to pay the minimum wage of $7.25 per hour. 29
U.S.C. § 206. Since Defendants had more than 11 employees, they are also subject to the
minimum wage thresholds established under NYLL. R. 56.1 (¶ 139). Under NYLL, "(a)
the basic minimum hourly rate shall be, for each hour worked … [is] … $ 8.75 per hour
on and after December 31, 2014; $9.00 per hour on and after December 31, 2015; $11.00
per hour on and after December 31, 2016; $13.00 per hour on and after December 31,
2017; $15.00 per hour on and after December 31, 2018." N.Y. Comp. Codes R. & Regs.
tit. 12 § 146-1.2. The FLSA and NYLL also require employers to pay overtime at a rate
of one and one-half times the regular rate for hours worked in excess of 40 hours in one
workweek. 29 U.S.C. § 207; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.

---

[2] Defendants contest Plaintiffs' allegation that they would also be ineligible to take tip credits on the ground that
Defendant Tecorral—a manager and employer with power to hire, fire, set schedules, set pay and keep records—
kept servers' tips for himself without accurately documenting how much he kept or what work he did. R. 56.1 (¶ 52
- 76, 112 – 138, 130-134, 239 – 243). Indeed, "an employer loses its entitlement to the tip credit where it requires
tipped employees to share tips with … managers." *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 467
(S.D.N.Y. 2015). While there remains a disputed issue of fact on the issue of Tecorral's receipt of tips, the issue is
moot here since Defendants are otherwise precluded from availing themselves of the tip credit, for failure to provide
the required notice.

Importantly, where an employee is subject to both state and federal wage laws, the employee is entitled to the greatest benefit available. *See Ni v. Bat-Yam Food Servs. Inc.*, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Accordingly, the greater NYLL minimum wage rates apply to this case.

### 1- Garcia's Hours

Defendants admit that Garcia was paid less than minimum wage for the entirety of her employment. The only issue of fact remaining in this regard is the exact number of hours that Garcia worked. It is undisputed that from the start of the statutory period— July 5, 2015[3] to March 2020—Garcia worked five days per week from 6:00 AM to 3:00 PM, i.e., 45 hours per week. However, Defendant Tecorral testified that Garcia took 30-minute breaks each day; thereby, reducing her work week by 2.5 hours. While it is not necessarily evident from the limited records that Defendants started keeping in 2019, that Garcia actually took such breaks (R. 56.1(¶ 140 – 141, 145, 146), there is no factual dispute that from July 5, 2015 to March 2020, Garcia worked *at least* five days per week and 42.5 hours per week—45 hours minus five 30-minute breaks per week.

Garcia's hours changed as a result of the COVID-19 pandemic: Garcia stopped working on March 15, 2020, as a result of the COVID-19 pandemic, and did not return to work until July 27, 2020. R. 56.1 (¶ 144). According to Defendant Tecorral, "after the pandemic," Plaintiff Garcia worked at least five days per week for approximately 38 hours per week. R. 56.1 (¶ 144). Thus, allowing for the daily 30-minute breaks (breaks that Garcia seems to dispute), it is undisputed that Plaintiff Garcia worked at least 35.5 hours per week from August 1, 2020 to the end of her employment, January 1, 2022.

---

[3] The complaint was filed on February 18, 2022, 6 years, and 228 days before that was July 5, 2015.

### 2- Garcia's Pay

Defendant Tecorral admitted that Garcia was paid no more than $52 per day in wages or $260 per week in fixed salary. R. 56.1 (¶ 147, 149). Based on a fixed salary of $260 per week and five days per week of working 8 to 8.5 hours worked per day, Defendants paid Plaintiff Garcia no more than $6 to $6.50 per hour R.56.1 (¶ 149)—well below even the lowest minimum wage rate in effect during her employment. Thus, there is no question that Plaintiff Garcia was paid less than minimum wage for the entirety of her employment at Three Decker.

Furthermore, it is not disputed that Garcia was ever compensated at one and one-half times the minimum wage rate for any hours she may have worked in excess of 40 hours in one workweek, as required under the FLSA and NYLL.

### 3- Partial Summary Judgment Granted as to Minimum & Overtime Wages

#### (i.) July 5, 2015, to October 21, 2019

It is undisputed that Defendants: (1) have no payroll records before October 21, 2019 and have no "specific evidence" or testimony to contradict Plaintiff Garcia's baseline work hours of 42.5 per week from July 5, 2015, to October 21, 2019; and (2) have conceded that they paid, at most, $52 per day (or $260 per week) in wages.

Accordingly, the Court finds, as a matter of law, that Defendants violated minimum wage and overtime law for the period of July 5, 2015 to October 21, 2019, by having Plaintiff Garcia work at least 42.5 hours per week for, at most, $260 per week in wages. Garcia will be permitted to prove at trial any additional minimum wage and overtime under payments, above and beyond those determined by the court in this motion.

(ii) October 21, 2019, to January 1, 2022

The limited payroll records that Defendants' have for Garcia demonstrate that they continued their practice of underpaying Garcia in violation of the minimum wage and overtime laws, from October 21, 2019, until the end of her employment on January 1, 2022. Indeed, Defendants records show that Garcia was paid, at most, $52 per day, and that she worked at least 35.5 hours per week. To put it in perspective, $52 in wages, at a rate of $15 per hour (the minimum wage in effect during this period), amounts to approximately 3.46 hours of work—well below the 7-8 hours a day she worked.

Accordingly, the Court finds that, as a matter of law, Defendants violated minimum wage and overtime law for the period October 21, 2019 through January 1, 2022, by having Plaintiff Garcia work at least 38.5 hours per week for, at most, $260 per week in wages. Unless the parties settle, Garcia will be permitted to prove at trial additional minimum wage under payments, above and beyond those determined by the court in this motion. Garcia may also seek to recover at trial any overtime violations by defendants during this period.

### *Spread of Hours Pay*

Under New York law, employers must pay an extra hour's pay at the New York minimum wage when their "spread of hours" is more than 10 hours. N.Y. Comp. Codes R & Regs. tit. 12, § 146-1.6. "Spread of hours" is defined as "the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

There is no dispute between the parties that Defendants did not pay spread of

hours wages to Garcia. However, whether Garcia ever worked more than 10 hours, in any given day is not clear from the record.

Accordingly, Garcia's motion for summary judgment on spread of hours is denied. She may offer proof at trial.

### *Liquidated Damages*

Under the FLSA and NYLL, employers who violate minimum wage, overtime, or spread of hours requirements must pay unpaid wages and an equal amount as liquidated damages. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198 (l-a), 663(1). "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages." *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 150 (2d Cir. 2008) (*citing* 29 U.S.C. § 216(b)). The employer may evade liquidated damages if it provides "plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it." *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987); *Barfield*, 537 F.3d at 150. The Second Circuit "has characterized the employer's burden as 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception'." *Barfield*, 537 F.3d at 150 ("good faith" requires active steps to ascertain dictates of FLSA and compliance); *see also* N.Y. Lab. Law § 198 (burden on employer to show good faith).

Here, Defendants did not act in good faith. They took no active steps to learn the requirements of the wage and hour law. R. 56.1 (¶ 253 – 257). Defendant Raftopoulos did not ensure that people working at 3 Decker Restaurant were trained to comply with the wage and hour laws. R. 56.1 (¶ 258). He sought no legal advice concerning wage and hour requirements. R. 56.1 (¶ 259 - 260). Meanwhile, Defendant Tecorral did not call the

phone number on the Department of Labor poster mounted on the wall for clarification.
R. 56.1 (¶ 261). *Vazquez v. 142 Knickerbocker Enter., Corp.*, 409 F. Supp. 3d 81
(E.D.N.Y. 2018) (ignorance of the law is no defense). Defendant Raftopoulos did not
want to keep payroll records and even told Defendant Tecorral "don't bother." R. 56.1 (¶
199 – 201). The records that do exist contain errors. R. 56.1 (¶ 227). Defendants willfully
paid Plaintiff Garcia $260 per week, as a matter of custom and practice, a fraction of the
minimum wage. R. 56.1 (¶ 148 - 149). The systematic minimum wage and overtime
violations show that Defendants cannot meet the affirmative defense and are liable for
liquidated damages as a matter of law.

Moreover, the evidence strongly suggests that Defendants knew of their
obligations; they previously settled a wage and hour case for $65,000 and apparently did
not change their practices to ensure compliance. Pltf's R. 56.1 (¶ 253 – 261); *Rojas v.
Three Decker Rest., Ltd.*, No. 19-CV-8592 (LJL), 2020 WL 3182773 (S.D.N.Y. June 15,
2020).

As for Defendants' argument that they did not keep records for Garcia because
she wanted to work off the books, even if that were true, it would not absolve Defendants
of their responsibility under the FSLA and NYLL; nor would it absolve them of their
duty to obey tax and other withholding laws.

Accordingly, Garcia is entitled to liquidated damages as a matter of law.

### *Misappropriation of Tips*

Defendants dispute Garcia's claim that gratuities were misappropriated from her
by manager Tecorral. They say that Tecorral only shared in a tip pool when he was
working as a waiter, and that Tecorral only supervised Garcia when he was acting as

22

a manager, not when he was acting as a waiter. Counterstatement para. 113-115.

Accordingly, whether Tecorral misappropriated any of Garcia's tips is an issue for trial.

### *Attorney's Fees, Costs and Interest*

Defendants' having been found liable for violations of minimum wage and overtime hours, and N.Y. Lab. Law § 195(1) and (3), Garcia is entitled to attorney's fees and costs as a matter of law. 29 U.S.C. § 216(b); N.Y. Lab. § 663(1); N.Y. Lab. Law § 198; *Tezoco v. GE & LO Corp.*, 199 A.D.3d 541, 158 N.Y.S.3d 39 (2021); *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 CIV. 10104 (ER), 2022 WL 4661926 (S.D.N.Y. Sept. 30, 2022); *Leevson v. Aqualife USA Inc*, 770 F. App'x 577, 584 (2d Cir. 2019).

Likewise, Garcia is entitled to recover prejudgment interest on all damages awarded under the NYLL at a rate of 9% per year. N.Y.C.P.L.R. § 5004. Prejudgment interest shall be calculated from the median date between each Garcia's start date and end date of employment. *Hernandez*, No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *36 (*citing* N.Y.C.P.L.R. § 5001).

The Court will entertain a motion for attorney's, fees, costs, and the calculation of interest 14 days after <u>final</u> judgment in this case is entered.  Fed. R. Civ. P. 54.  I will not entertain multiple motions.

### *Defendants' Counterclaim*

The facts underlying Defendants' counterclaims are these: Garcia, allegedly pocketed tips by placing tip money into her apron rather than into a tip jar from which all employees shared tips. SAA ¶ 218. A surveillance camera allegedly caught Ms. Garcia

putting tip money into her apron rather than the tip jar on November 6, 2021; Defendants allege that other restaurant employees will testify that Ms. Garcia pocketed tip money on other occasions. Dkt. No. 100 at 2. A second surveillance video allegedly shows Ms. Garcia taking $2 from the restaurant's cash register. SAA ¶ 222. Defendants contend that this also was not an isolated incident, although their only evidence for the same is that some unidentified person told Defendant Athanasios Raftopoulos (an owner of Three Decker Restaurant) that unnamed customers had told the unidentified person that Garcia was pocketing money (Dkt. No. 100 at 3) – double hearsay, and utterly inadmissible. Defendants further assert that Mr. Raftopoulos noticed money missing from the cash register on a "daily basis" until Garcia stopped working at the restaurant, at which point this stopped. *Id.*

Garcia moved to dismiss the counterclaims on lack of subject matter jurisdiction grounds, pursuant to Fed. R. Civ. P. 12(b)(6). The Court granted Garcia's motion as to that portion of Defendants' counterclaims that sought to recover money from Garcia for allegedly stealing from the cash register. The Court held that that claim simply arose out of the employment relationship between Garcia and Defendants (unrelated to the FSLA or NYLL claims asserted in the complaint); and therefore, the court lacked subject matter jurisdiction over cash register theft claim. *See Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 467 (S.D.N.Y. 2008).

However, the Court denied Garcia's motion to dismiss the tip theft claim on the ground that the theft of tips actually touches on matters relating to her FLSA claim. Courts in this circuit have held that a counterclaim relating to theft of tip money, which could impact such issues as the amount of tip credit and minimum wage owed to Garcia

and her fellow employees, is related to the subject matter of the FLSA claims. *See, e.g.*, *Stefanovic v. Old Heidelberg Corp.*, No. 18 CV 2093-LTS-KNF, 2019 WL 3745657, at *2 (S.D.N.Y. Aug. 8, 2019).

But now the predicate that that permitted the Court to exercise jurisdiction over the "tip theft" counterclaim has been removed from the case. The Court has ruled in Garcia's favor in the present motion, holding that Defendants are not eligible to off-set their wage and hours liability by showing they are entitled to credit for the tips Garcia received. *Supra*. at 16.   Indeed, Defendants' agreed that they are not entitled to a tip credit. R. 56.1 (¶ 88 – 111). Other than for the purposes of calculating possible off sets toward the minimum wage, overtime hours, spread of hours wages owed and employee, or the amount of tax or other required withholding, Defendants (as employers) have no interest in Garcia's or their other employees' tips. "Labor Law § 196–d clearly forbids an employer demanding or accepting, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any charge purported to be a gratuity for an employee." *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 78 (2008) (noting the law is clear); N.Y. Lab. Law § 193; 12 NYCRR 146-2.16 (explicitly stating that employers are not required to compensate for tip pool participants not contributing); *Cohen v. Stephen Wise Free Synagogue*, No. 95 CIV. 1659 (PKL), 1996 WL 159096 (S.D.N.Y. Apr. 4, 1996) (dismissing counterclaims as unlawful wage deductions). Since Defendants have no legally protected interest in gratuities, they cannot maintain a claim against Garcia for stealing from the tip pool.[4]

---

[4] Defendants also have no basis to claim that a waitress keeping her tips affected wages or tip credits of nonparty employees. Employers do not stand in the shoes of nonparty employees to recover tips and Defendants have an independent obligation to pay lawful wages to all employees. Defendants also cannot suffer any damages if a waitress declines to contribute to the tip pool because "nothing in this section [on

Defendants' counterclaim is dismissed.

This constitutes the decision and order of the Court.

Dated: March 26. 2024
      New York, New York

U.S.D.J.

BY ECF TO ALL COUNSEL

---

tip pooling] shall be interpreted as requiring an employer to compensate participants in tip pooling for tips wrongfully withheld from the tip pool by any participant." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.16.

26